[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT, # 122 Procedural and Factual History
On February 2, 1998, the plaintiff, Julio Gomez, Jr., as executor of the estate of his father, Julio Gomez, filed a twenty-six count complaint,[1] against the City of Middletown, the Board of Education for the City of Middletown and the individual defendants, David H. Larson, Superintendent of Middletown Schools, John F. Shaw, Chair, Middletown Board of Education, and Domenique Thorton, Member of the Common Council, City of Middletown.
The plaintiff's complaint sets forth a sundry of counts sounding in defamation (counts one through nineteen), which arose from comments reportedly made by the individual defendants that were subsequently published in the Middletown Press and HartfordCourant or made by defendant Thorton during a televised political debate and at a Board of Education meeting. The plaintiff seeks to hold the individual defendants jointly and severally liable for each other's allegedly defamatory remarks (count twenty). The complaint also alleges that the defendants violated Julio Gomez' right of privacy by disclosing confidential information, a breach which subjected him to being held in a false light (counts twenty-one through twenty-four). Finally, the plaintiff alleges that defendant Larson, the Board and the City violated his CT Page 6814 father's civil rights under 42 U.S.C. § 1983 (counts twenty-five and twenty-six).
In their second revised answer, filed June 23, 1998, the defendants assert a litany of special defenses to all counts of the complaint, including privilege, fair comment, truth or substantial truth, collateral estoppel and/or res judicata, governmental and statutory immunity. With respect to the invasion of privacy counts, the defendants also assert the special defense of consent.
On September 29, 1998, the defendants filed a motion for summary judgment with the requisite memorandum of law.[2] The plaintiff filed an objection and a memorandum of law in opposition to the motion for summary judgment on November 9, 1998.[3] Additional memoranda of law were subsequently filed by each party — defendants' reply filed December 29, 1998; plaintiff's response to defendants' reply filed January 20, 1998, plaintiff's addendum to his memorandum in opposition to the defendants' motion to strike filed January 21, 1999; defendants' supplemental memorandum of law filed January 26, 1999; plaintiff's supplemental memorandum of law filed February 8, 1999.
The defendants move for summary judgment and assert that there exists no genuine issue of any material fact concerning the issue of their liability for Mr. Gomez' alleged injuries; the plaintiff claims that because he has alleged malice a genuine issue of material fact as to the issue of liability exists. Given the nature of the complaint and special defenses, an extensive retelling of the facts becomes necessary.
After his arrest in 1973, on burglary and harassment charges, Julio Gomez pleaded guilty to and was convicted of the lesser charges of harassment and trespass. New York law defines both offenses as "violations," not "crimes." More than twenty years later, in the fall of 1995, Mr. Gomez applied for a temporary job with the Middletown Board of Education. On his written application, Mr. Gomez responded "no" when asked if he had any prior criminal convictions. In June of 1996, Mr. Gomez received a permanent, classified position with the City of Middletown, serving as a night custodian for the Woodrow Wilson Middle School. In January 21, 1997, Mr. Gomez applied for a position as custodial manager with the City of Middletown. On that written application Mr. Gomez checked. the box "no" after the question, CT Page 6815 "Have you ever been convicted of a felony?"
Less than a week later, an arrest warrant issued against Mr. Gomez for the misdemeanor offense of disorderly conduct; Mr. Gomez turned himself into the police on January 29, 1997. The arrest was based upon complaints filed a month earlier by his half-sister Ana Gomez. Ms. Gomez accused Mr. Gomez of stalking her; practicing witchcraft to coerce her into engaging in sexual acts with him; and using racially-motivated threats to intimidate her. According to the investigating officer's report, Mr. Gomez, admitted that he practiced witchcraft and that, in retaliation for Ana Gomez' relationship with a black man, he initiated the sexual relationship with her in order to humiliate her. On January 30, 1997, the day after his arrest, the Superior Court at Middletown issued a protective order, restraining Mr. Gomez from contacting Ms. Gomez (Gordon, J). In May of 1997, Mr. Gomez applied for the court-sponsored Family Violence Education Program; the matter remained pending throughout the summer of 1997.
Meanwhile, as required by state law and pursuant General Statutes § 10-221d, the Middletown Board of Education requested a criminal background check of Mr. Gomez. In April of 1997, the Board received an initial report from the Federal Bureau of Investigation, which indicated that Mr. Gomez had been arrested in 1973 on burglary and harassment charges. The Board then asked the Middletown Police Department to provide additional information regarding Mr. Gomez' criminal background. On May 7, 1997, the Middletown Police Department erroneously informed the Board that Mr. Gomez had been convicted of a Class D felony (based on the New York arrests) and also advised the Board about the current, local matter.
That same day, the Board suspended Mr. Gomez with pay. In a letter written by Kendall J. Jackson, Director of Facilities for Middletown Public Schools, dated May 7, 1997, Mr. Jackson accused Mr. Gomez of falsifying his employment application. Jackson also barred Mr. Gomez from school grounds unless Mr. Gomez first obtained permission from the school's principal. Mr. Jackson reiterated that directive in a June 13, 1997, letter.
On May 9th, Mr. Jackson, Mr. Gomez and his union representative, Robert Archer, attended a pre-disciplinary hearing conducted by Lawrence Kinch, Director of Personnel for the City of Middletown. At that meeting, Mr. Archer a CT Page 6816 representative of Local 466, the union then representing Mr. Gomez, requested copies of Mr. Gomez' criminal records under the Freedom of Information Act. Mr. Gomez verbally consented to the disclosure of his criminal records. On May 20, 1997, these records, including information related to the Middletown arrest, were released to Mr. Archer. At the May 9, 1997, hearing, Mr. Gomez denied falsifying his applications and, on May 16, 1997, provided the Board with a certificate of disposition regarding the New York arrests; which the Board of deemed inconclusive. A subsequent meeting was held May 28, 1997.
A pre-termination hearing was held on June 10, 1997. At that meeting, the hearing officer, then Mayor Maria Holzberg, ordered that Mr. Gomez be transferred to the Parks and Recreation Department, pending an outcome of the continuing investigation of his criminal background and, ultimately, a resolution of his employment status. As it happened, in June of 1997, Mayor Holzberg found herself engaged in a contentious primary for the democratic mayoral nomination against rival, and now mayor, Domenique Thorton.
Within days of the June 10th hearing with the mayor, the first news article regarding this matter appeared in the press. The initial, June 13, 1997, piece carried in the Middletown Press
focused on city officials' concerns about the transfer ("Officials Air Concern On Transfer") Subsequent articles reported on the concerns voiced by school officials and citizens that the mayor might allow Mr. Gomez to return to work in the city schools, a worry prompted less by the New York convictions than the local, pending matter. Some of these articles, commentary and/or letters to the editor quoted mayoral candidate Thorton, who vehemently challenged the Mayor's priorities. Unlike the individually named defendants, Mayor Holzberg refused to discuss the pending matter, citing Mr. Gomez' due process rights.
While the initial newspaper reports did not include details regarding the lurid accusations that precipitate Mr. Gomez' recent arrest, within a day the Middletown Police Department confirmed this information and Ana Gomez' disturbing allegations became widely reported. Mr. Gomez, his employment, the mayor's handling of the matter and the dispute between City Hall and the Board of Education over which governmental entity should control who works in the town's schools became heated topics and matters of public controversy. CT Page 6817
On June 20, 1997, Mr. Gomez sought a temporary injunction to prevent the Board of Education from enforcing Mr. Jackson's June 13, 1997, directive. This court (Arena, J.) denied Mr. Gomez' application on June 30, 1997.
Little more than a month later, on July 24, 1997, and prior to a final resolution of the employment termination proceeding, Mr. Gomez died. Before his death, on July 18, 1997, Mr. Gomez requested a retraction of the alleged defamatory statements made by the defendants. The Board of Education issued a statement published on August 2, 1997, that confirmed that Mr. Gomez had not lied on his employment applications. The Board's statement also clarified Mr. Gomez' conviction record. Defendant Thorton declined to issue a retraction for her statements.
 Standard of Review
"`Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgement, the trial court must view the evidence in the light most favorable to the nonmoving party.'. . ." (Citations omitted.) Orkney v. Hanover Ins. Co.,248 Conn. 185, 201, ___ A.2d ___ (1999). A "party seeking summary judgment has the burden of showing the nonexistence of any material fact"; Connel v. Dolwell, 215 Conn. 242, 246,571 A.2d 116 (1990); however, a "party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue in dispute." Anderson v. Liberty Lobby. Inc.477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986).
A "material fact is one that will make a difference in the outcome of the case." Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaudv. Gurney, 168 Conn. 431, 362 A.2d 857 (1975). "A motion for summary judgment "is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact.' Perille v. RaybestosManhattan-Europe, Inc., 196 Conn. 529, 543, 494 A.2d 555 (1985)."General Accident Ins. Co. v. Powers, Bolles, Houlihan Hartline.Inc., 50 Conn. App. 701, 708, 719 A.2d 77 (1998). CT Page 6818
 Discussion
I. Defamation
The plaintiff argues that the defendants libeled his father either directly or by innuendo, and that the defendants are deprived of their special defenses of immunity because they acted with malice.[4] The defendants assert that many of the complained of statements are non-defamatory or that they cannot be held liable because the statements are true or substantially true. The defendants further contend that if their comments are defamatory these remarks are absolutely privileged as "pure" opinions under the First Amendment to the federal constitution or protected by the common-law, conditional privilege of fair comment on matters of public concern. The defendants also assert that they are entitled to qualified governmental immunity and that this immunity bars the plaintiff's claim.
By definition, defamation involves the publication of a false assertion of fact that injures another individual's reputation.Kelly v. Bonney, 221 Conn. 549, 563, 606 A.2d 693 (1992).
Libel is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business or if it charges a crime of moral turpitude or one to which an infamous penalty attaches. "Whether the words are actionable per se is a question of law for the court." Miles v. Perry,11 Conn. App. 584, 602, 529 A.2d 199 (1987). See also Lizotte v. Welker,45 Conn. Sup. 217, 225, 709 A.2d 50 (1996). "All of the circumstances connected with the publication of defamatory charges should be considered in ascertaining whether a publication was actionable per se. The words used, however, must be accorded their common and ordinary meaning, without enlargement by innuendo." Id., 602-03. Words" are taken as reasonable persons would understand them. . . . Moreover, the words must be viewed in the context of the entire editorial [or news article]." (Citations omitted.) Dow v. New HavenIndependent, Inc., 41 Conn. Sup. 31, 36, 549 A.2d 683 (1987).
A statement which injures a person's reputation is not defamatory if it is true. Substantial truth forms a basis for the defense of truth. Stow v. Converse, 4 Conn. 17, 33. (1821). "`A workable test [of the substantial truth of the statement] is whether the libel as published would have a different effect on CT Page 6819 the mind of the reader from which the pleaded truth would have produced.'" Griffin v. Clemow, 28 Conn. Sup. 109, 111,251 A.2d 415 (1968), quoting Fleckenstein v. Friedman, 266 N.Y. 19, 23." "It is not necessary for the defendant to prove the truth of every word of the libel. If he succeeds in proving that "the main charge, or gist, of the libel" is true, he need not justify statements or comments which do not add to the sting of the charge or introduce any matter by itself actionable.'" Goodrichv. Waterbury Republican-American, Inc., 188 Conn. 107, 113,438 A.2d 1317 (1982), quoting Gatley, Libel and Slander (2d Ed.) p. 178.
First, although not addressed by either the plaintiff nor the defendants, at common law, only the living may be defamed. See Restatement (Second) of Torts § 560 (Rev. Ed. 1977). Mr. Gomez died on July 27, 1997; consequently, any statements made after his death cannot form a basis for legal liability. Therefore, judgment for the respective defendants is entered for counts twelve, eighteen, and nineteen.
The plaintiff contents that the defendant's statements were both false and harmful to Mr. Gomez' reputation, and therefore actionable. The defendant claims that counts two, three, four, five, six, seven, eight, nine, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, and nineteen were either non-defamatory or, if defamatory, true or substantially true.
Truth or substantial truth provides an absolute defense against an allegation of libel. See Goodrich v. WaterburyRepublican-American, Inc., supra, 188 Conn. 107, 113. This court concludes that as a matter of law, the defendant's remarks relevant to either the New York convictions or Mr. Gomez' "criminal background" are true or substantially true. "The issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced." Id.
See also, Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516
(1991).
Had the defendants stated the literal truth, i.e., that a criminal background check revealed that in 1973 Mr. Gomez was arrested on burglary and trespass charges and pleaded guilty to the lesser charges of trespass and harassment and further that he currently had a criminal misdemeanor charge of disorderly conduct pending against him, this would not have produced a different CT Page 6820 effect upon the reader. See Lizotte v. Welker, supra,45 Conn. Sup. 217, 223.
Accordingly, because the court finds that counts one, two, three, four, five, six, seven, eight, ten, eleven, thirteen, sixteen, and seventeen are either non-defamatory or substantially true with respect to comments about Mr. Gomez' previous criminal record, judgment is entered for the respective defendants on those counts.
The second difficulty encountered by the plaintiff with respect to liability involves many of the alleged defamatory statements and concerns his confusion regarding the nature of defamation by innuendo. Connecticut has not recognized defamation by implication.[5] See Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 326, 477 A.2d 1005 (1984). Instead, Connecticut acknowledges that statements may create defamation by innuendo when a defendant omits crucial details or fails to "present the whole picture." Id., 322. In order for a statement to create defamation by innuendo there must exist undisclosed facts that, if disclosed, would substantively alter the tone of the statement.
Memphis Publishing Co. v. Nichols, 569 S.W.2d 412 (Tenn. 1978), the quintessential case, involved a newspaper article that "correctly stated that the plaintiff had been shot when she had been found with another woman's husband. The article neglected to report, however, the additional fact that the plaintiff and the other woman's husband were at a social gathering, the several members of which included the plaintiff's husband. The clear inference from the article was an adulterous affair; the additional fact clarified the plaintiff's position as an innocent bystander." Strada v. Connecticut Newspapers, Inc., supra,193 Conn. 313, 322-23.
All of the relevant facts upon which the defendants based their comments about Mr. Gomez were widely reported. Notwithstanding the plaintiff's interpretation, the defendants' comments and opinions, even though these remarks carried negative, injurious inferences, cannot support a claim of defamation. If all the facts that a defendant relies upon when making a statement are disclosed, the statement can only be actionable if the publication contains a provably false statement of fact. It follows that if the content of the publication contains no defamatory matter, i.e., no provably false statement, CT Page 6821 liability cannot attach. Critical to the court's assessment of the falsity of a remark is the "objective" verifiability of the comment. See Milkovich v. Loraine Journal Co., 497 U.S. 1 (1990) and Lizotte v. Welker, supra, 45 Conn. Sup. 217, 229. Comments by the defendants that they do not believe that Mr. Gomez should be allowed to work in the city's schools do not assert objective facts but rather subjective opinions about Mr. Gomez' fitness to be around children.
Accordingly, judgment for the respective defendants is entered for counts one, three, four, five, six, seven, ten, eleven, thirteen, and fourteen on this alternative ground.
In Connecticut, "expressions of `pure' opinion are guaranteed virtually complete constitutional protection." Goodrich v.Waterbury Republican-American, Inc., supra, 188 Conn. 118-19. Pure opinions on matters of public concern, even though about a private individual, cannot form a basis of liability. "Our review of the case law from New York Times Co. [v. Sullivan,376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] through Gertz . . . leads us to conclude that expressions of `pure' opinion [statements based upon known or disclosed facts] are guaranteed virtually complete constitutional protection.' Id.
Considerable latitude is given to defendants commenting on matters of public concern regardless of whether or not the individual is a private or public figure. This First Amendment privilege shields the respective defendants for comments, which might otherwise be construed as defamatory, and provides an alternative ground for granting the defendants' motion for summary judgement on counts one, three, four, five, six, seven, ten, eleven, thirteen and fourteen.
What remains after the above analysis are two counts which allege verifiably false statements of fact that may subject the respective defendants to liability for defamation: count nine and count fifteen.
Count nine, attributed to defendant Shaw, alleges the following defamatory publication:". . . the employee made a falsestatement on his job application pertaining to a criminalhistory. . . . the board does not want the employee identified as Julio Gomez, to be returned to the school system because of information gleaned through a criminal background check by the police department." (Emphasis added.) The Hartford Courant, June CT Page 6822 13, 1997. "Holzberg, School Board at Odds Over Worker."
Count fifteen, attributed to defendant Thorton, alleges the following defamatory publication: ". . . thanks to the board, Mr. Shaw, [and] Dr. Larson for [taking a] strong stand to terminatean employee who is a danger to our children. . . . whether a person is guilty of a felony or a misdemeanor, doesn't matter. . . . If the board feels he should not be near children, I agree. . . . and it's wrong to transfer this employee to parks and recreation because he'll be near children . . . The mayor is making a political decision and she must balance due process rights of an individual against the safety of children, and safety of children should win." Comments reportedly made at a Board of Education meeting held June 17, 1997.
The qualified governmental privilege immunizes public employees from liability for the negligent performance of discretionary duties,[6] it does not protect public employees from liability for wilful, wanton, reckless or malicious acts. In the context of an assertion of qualified governmental immunity, malice is defined differently than "actual malice," a term of art when used in the defamation context.[7] The appropriate showing necessary to defeat a claim of qualified governmental immunity is one of common law recklessness. See Elliott v. Waterbury,245 Conn. 385, 420, 715 A.2d 27 (1998). Based on the affidavit submitted by defendant Larson; see De Dominicis v. AmericanNational Fire Ins. Co., 2 Conn. App. 686, 687, 483 A.2d 616
(1984); which the plaintiff failed to rebut, the court concludes that the doctrine of qualified, governmental immunity shields the defendant Shaw from liability.
The court has no basis for ruling on defendant Thorton's claim as no affidavit or evidence has been submitted on her behalf.
Accordingly, the defendants' motion for summary judgment with respect to count nine is granted and with respect to count fifteen is denied.
The defendants further contend that the common law privilege of "fair comment" shields them from liability for any defamatory remarks. "It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on a occasion of privilege, as in the bona fide discharge of a public or private duty, [however] it is a question of fact for CT Page 6823 the trier of fact to determine whether the defendant has abused a conditional privilege." Pantaleo v. Ravski, Superior Court, judicial district of New Haven at New Haven, Docket No. 326931 (February 14, 1997) (Silbert, J.). Consequently, the privilege of "fair comment" provides an inappropriate grounds for summary judgment under these facts.
In addition to the individual counts alleging libel, the plaintiff seeks to hold the individual defendants jointly and severally liable for each other's allegedly defamatory remarks. Outside of the obvious non-applicability of this theory in light of this court's ruling on the above defamation counts, an allegation by the plaintiff is insufficient to support the contention that the defendants organized, planned or acted in concert to defame Mr. Gomez. See Miles v. Perry, supra,11 Conn. App. 584, 608. At a minimum, the plaintiff must provide facts from which the court could reasonably infer that the individual defendants acted in concert to defame Mr. Gomez. The plaintiff has failed to do so. Neither did the plaintiff provide any documentary evident to rebut the affidavits provided by Jackson, Cormier or defendant Larson.
Accordingly, the defendants motion for summary judgment with respect to count twenty is entered for the respective defendants.
II. False Light
The Connecticut Supreme Court has recognized that a cause of action may lie for an invasion of privacy based on "`(3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye.'" Honan v.Dimyan, 52 Conn. App. 123, 132, ___ A.2d ___ (1999), quotingVenturi v. Savitt, Inc., 191 Conn. 588, 591 n. 1, 468 A.2d 933 (1983).
The court in Perkins v. Freedom of Information Commission,228 Conn. 158, 172, 635 A.2d 783 (1993) held that these causes of action may lie when there exists a disclosure of personal or private information that: "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." When intimate details about an individual's life "are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest." CT Page 6824 Id., 173 The Perkins court specifically addressed the reasonably expectation of public employees relative to their personnel records and concluded that public employees have a "diminished" expectation in retaining the confidentiality of those records, especially when information contained in an individual's personnel file involves a matter of "legitimate public concern." Id., 174.
The plaintiff claims that the defendants violated Mr. Gomez' right to privacy by disclosing publicly that Mr. Gomez was the subject of a pre-termination proceeding. The defendants argue that the information about Mr. Gomez was independently available to the media and any disclosure by them of this same information cannot form the basis of liability, alternatively the defendants assert that Mr. Gomez consented to the release of his criminal records.[8] The defendants further contend that their statements were true or substantially true and "truth" defeats the plaintiff's claim of invasion of privacy by false light.
There is no dispute that the qualifications, including the criminal background checks, of public employees is a legitimate concern to the public. See General Statutes 10-221d. And consequently, the plaintiff has failed to meet the second prong of the Perkins test. "Moreover, as noted under the discussion regarding defamation, the defendant's statements regarding Mr. Gomez' criminal background were true or substantially true. Consequently, no action can lie for the defendants publishing information about the termination proceedings instituted against Mr. Gomez.
However, the plaintiff may still establish an invasion of privacy by false light, if the plaintiff demonstrates that the defendants acted with "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other [Mr. Gomez] would be placed."Honan v. Dimyan, 52 Conn. App. 123, 133, ___ A.2d ___ (1999).
A claim that Mr. Gomez falsified his employment application would be sufficient to establish a false-light invasion of privacy against defendant Shaw (see count nine); but again, as discussed within the defamation context the defendant's special defense of qualified governmental immunity bars the plaintiff's claim.
The plaintiff also seeks to hold the City and Board of CT Page 6825 Education liable for the negligent or reckless conduct of their employees. General Statutes § 52-557n, a codification of the doctrine of governmental immunity, only permits municipal liability if a municipal employee negligently performs a "ministerial" duty, i.e., one prescribed by the municipality. Defendant Shaw's actions where "discretionary" and consequently the doctrine of governmental immunity shields the City and Board of Education from liability for the negligence of their employees. See Elliott v. Waterbury, supra, 245 Conn. 385, 411. The governmental immunity afforded municipalities and boards of education is applicable to bar the plaintiff's claims against the City and Board of Education.
For the foregoing reasons, the defendants' motion for summary judgment on counts twenty-one, twenty-two, twenty-three, and twenty-four is granted.
III. 42 U.S.C. § 1983
To support a claim for damages under 42 U.S.C. § 1983, the plaintiff must establish that a governmental official, acting under color of state law, deprived his father of a clearly established right secured by the Constitution or the laws of the United States. See Schnable, v. Tyler, 230 Conn. 735, 745,646 A.2d 152 (1994). To state a valid cause of action against a municipal defendant the plaintiff must further establish that "alleged constitutional violation was authorized under the municipality's policy or custom." Ivimey v. Watertown,30 Conn. App. 742, 753, 622 A.2d 603 (1993), cert. denied,227 Conn. 916,625 A.2d 1375 (1993).
The plaintiff claims that the June 13, 1997, directive, which required that Mr. Gomez obtain permission before entering school grounds, deprived Mr. Gomez of rights protected by the federal constitution. The plaintiff further argues that the City and Board, by allowing Mr. Larson, the Superintendent of Schools, to make these decisions, established a custom or policy that deprived Mr. Gomez of his fundamental rights. In arguing for summary judgment, the defendants assert that the plaintiff has failed to state a cognizable cause of action under 42 U.S.C. § 1983.
At best, the plaintiff alleges purely speculative harms. Despite the plaintiff's assertions, which are virtually unsupported by analysis or legal authority, the decision by Mr. CT Page 6826 Larson to limit Mr. Gomez' access to school property did not infringe upon Mr. Gomez constitutionally-protected right to travel; disenfranchise him or interfere with his fundamental right to rear his children. Individuals do not enjoy an unqualified right to access public property; see Lamb's Chapel v.Center Moriches Union Free School District, 959 F.2d 381, 491
(2nd Cir. 1992). The plaintiff has failed to establish that Mr. Gomez enjoyed such an unqualified right as a matter of law. SeeHunt v. Prior, 236 Conn. 421, 428, 673 A.2d 514 (1996).
Moreover, even if the plaintiff had established a cognizable claim under § 1983, it would have been barred under the doctrine of governmental immunity. With respect to defendant Larson, the court has "formulated an objective standard for immunity from liability under § 1983. "[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have know.'" Schnabel v. Tyler, supra, 230 Conn. 735, 746.
With respect to the City and Board of Education, the plaintiff's contention that by delegating decision-making authority to Mr. Larson this act establishes a municipal custom or policy proves equally unavailing. See Tedesco v. Stamford,20 Conn. App. 51, 57, 563 A.2d 1046 (1989). The plaintiff's complaint is devoid of any facts that would support a claim that the City of Middletown or Board of Education employed a "custom" or "policy" that operated to deprive Mr. Gomez of his federally guaranteed rights. That defect alone warrants summary judgment in favor of the defendants. See Paul v. City of New Haven,48 Conn. App. 385, 338, 710 A.2d 798 (1998).
Accordingly, judgement is entered for the respective defendants for counts twenty-five and twenty-six.
 Conclusion
In conclusion the court grants the defendants' motion for summary judgment on counts one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, CT Page 6827 twenty-two, twenty-three, twenty-four, twenty-five and twenty-six.
The court denies the defendants' motion for summary judgment on count fifteen.
It is so ordered.
Elaine Gordon, Judge, Superior Court